## In Re Anonymous No. 42 D.B. 81

Disciplinary Board Docket No. 42 D.B. 81.

REPORT OF THE DISCIPLINARY
BOARD OF THE SUPREME COURT OF·
PENNSYLVANIA

CURRAN, *Member,* August 9, 1985—

### I.   HISTORY OF PROCEEDINGS

On July 23, 1981, petitioner, Office of Disciplinary Counsel, filed a petition for discipline with the Disciplinary Board charging respondent, [     ], with multiple violations of the Code of Professional Responsibility outlined in seven separate charges. The petition for discipline was duly served on respondent on July 27, 1981. No answer to the petition was filed within the prescribed time period. The matter was assigned to hearing committee [     ] on September 9, 1981. On September 11, 1981, respondent's answer to the petition was received.

A prehearing conference was scheduled and held on October 27, 1981. It was decided that a separate

preliminary hearing on the issue of delayed prosecution (laches) be held. The laches hearing was initially scheduled for November 13, 1981, but was continued at respondent's request because of judicial workload created by the medical absence of the other [    ] County judge. The laches hearing was then rescheduled to February 24, 1982. A scheduling conflict with a member of the hearing committee forced a continuance to April 15, 1982, when the laches hearing was held. After the filing of briefs by both parties, the hearing committee issued a ruling on July 6, 1982, denying respondent's motion to dismiss on the grounds of laches.

Hearings on the substantive disciplinary charges were then set for November and December 1982, and January 1983. The November and December sessions were continued due to respondent's judicial schedule and due to his undergoing eye surgery.

Hearings were held on January 10-11, 1983. Petitioner was represented by [A], assistant disciplinary counsel. Respondent was represented by [B], Esq. Testimony from 10 prosecution witnesses was taken during the two hearing days.

Further hearings were scheduled for February 3-4, 1983, but were continued due to respondent's medical illness. Continued hearings were scheduled for August 17-18, 1983. On August 17, 1983, testimony was received from four additional witnesses, and documentary evidence was introduced pertaining to the black lung cases. The Office of Disciplinary Counsel then rested. Respondent presented a motion to dismiss alleging that newspaper publicity violated his right to confidentiality and prejudiced his case.

Briefs were duly filed, and argument was presented to the hearing committee on September 16,

1983. The hearing committee denied respondent's motions by order of September 29, 1983. Respondent was afforded 30 days to appeal that order, but no appeal was filed.

Hearings to take defense testimony were then set for January 23-24, 1984. Respondent requested a continuance of those hearings, which request was denied by the hearing committee. The hearings convened on January 23, 1984, but respondent did not appear and presented no defense evidence. The record was closed. Respondent was afforded 30 days to file any appeal from the denial of the continuance or of the closing of the record. No such appeal was filed.

Pursuant to written "Notice of Hearing Dispositional" the hearing committee met on the morning of June 11, 1984, to afford the parties an opportunity to present any facts or arguments concerning appropriate disposition of this matter. Respondent's attorney, in a letter dated June 4, 1984, to [      ], chairman of the hearing committee, reported that neither he nor respondent would appear and neither did appear.

Petitioner, through its attorney, [A], Esq., did appear and recommended disbarment.

## II. DISCUSSION

Hearing committee [    ], attorneys [      ] filed their report on February 27, 1985. Therein said committee thoroughly reviews the facts and carefully discusses the rules respondent allegedly violated and their application to the facts in the instant procedure.

The discussion herein will therefore consist of a count by count synopsis of the case, initially citing a brief description of respondent's alleged conduct

followed by the Disciplinary Rules petitioner charged were violated.

## Charge No. 1

Charge No. 1 avers that respondent was retained to prosecute a personal injury action on behalf of [C], who was injured in an automobile accident. Respondent conducted no settlement negotiations on [C]'s behalf, failed to file any action on her behalf prior to the expiration of the statute of limitations or at any time thereafter, and did not make any other effort to preserve [C]'s cause of action. Further, respondent failed to respond to numerous telephone calls of [C], and did not advise her that her case had been prejudiced due to his lack of attention. Finally, in January of 1976 respondent transferred the files to attorney [D] without consulting with [C]. As a result of respondent's failure to timely institute suit, [C] was precluded from prosecuting her cause of action.

Petitioner avers that respondent has, by his conduct, violated the following disciplinary rules of the Code of Professional Responsibility:

A. D.R.2-110(A)(2) — dealing with necessary steps to be taken prior to an attorney's withdrawal as counsel;

B. D.R.2-110(C) — dealing with the limited circumstances under which an attorney may withdraw as counsel;

C. D.R.6-101(A)(3) — dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

D. D.R.7-101(A)(1) — dealing with an attorney's intentional failure to seek the lawful objectives of his client;

E.  D.R.7-101(A)(2) — dealing with an attorney's intentional failure to carry out a contract of employment;

F.  D.R.7-101(A)(3) — dealing with an attorney's intentionally prejudicing or damaging his client;

G.  D.R.1-102(A)(6) — dealing with conduct that adversely reflects on an attorney's fitness to practice law.

## Charge No. 2

Charge No. 2 was withdrawn by petitioner at the hearing.

## Charge No. 3

Charge No. 3 avers that respondent was retained by [E] to represent [E] in the purchase of a residential property from a seller who was also a client of respondent. [E] was aware of respondent's dual representation. Respondent assured [E] that he was getting clear title to the property and the sale was consummated. In reliance on respondent's assurance of clear title, [E] proceeded to make improvements to the property, expending approximately $5,000 therefor. Subsequently, [E] applied for a loan from a lending institution whose attorney searched the title and advised [E] that the title was defective and why.

At the time that the sale was consummated, Respondent knew or should have known that the title was defective but respondent failed to advise [E] of this fact and to the contrary assured [E] that he was getting clear title.

[E] advised respondent of the title problems found by the lending institution's attorney. Respondent prepared and recorded a purportedly corrective

deed. This did not correct the title problems. Respondent refused to undertake any additional work on the matter. He did not discuss the title problems with the lending institution's attorney or take any additional steps to cure the defects.

Petitioner avers the respondent violated the following Disciplinary Rules of the code of Professional Responsibility:

A. D.R.1-102(a)(4) — dealing with conduct involving dishonesty, fraud, deceit and misrepresentations.

B. D.R.1-102(A)(6) — dealing with conduct that adversely reflects on an attorney's fitness to practice law.

C. D.R.5-105(A) — dealing with an attorney's declining employment if it will be likely to involve him in representing different interests;

D. D.R.5-105(B) — dealing with an attorney's continuing multiple employment if it will be likely to involve him in representing differing interests;

E. D.R.6-101(A)(3) — dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

F. D.R.7-101(A)(1) — dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

G. DR7-101(A)(3) — dealing with an attorney's intentional prejudicing or damaging his client during the course of the professional relationship.

## Charge No. 4

Charge No. 4 avers that sometime prior to February 8, 1972, [F] retained respondent to enter into property settlement negotiations or to commence an action for partition of real estate and personal property against her former husband, [G]. On February

8, 1972, respondent filed in court a complaint for partition of real estate and personal property seeking the appointment of a trustee to sell the same. A court decree appointing a trustee was signed on October 5, 1973, and said decree directed the trustee to sell real estate and made no mention of the sale of personal property.

Subsequent negotiations between April and June of 1974 between counsel for the parties failed to result in a settlement of the case, and thereafter the trustee scheduled the public sale of real estate for August 28, 1974. During such negotiations respondent was made aware of the fact that Mrs. [F] and her husband were interested in purchasing the real estate and that they felt that such real estate would be worthy approximately $9,000.

Starting approximately one month prior to the date of the sale, Mr. [F] made daily attempts to contact respondent about the sale, but, all that Mr. [F] received from respondent was a copy of the legal notice of the sale that appeared in the local newspaper.

Respondent did not appear at the public sale. Although Mr. [F] attended said sale with the intention of bidding $10,000 for the property, because of lack of knowledge of procedure, he did not make any bid for the property. He subsequently discovered that the real estate had been sold for $6,327.97, which represented $100 more than the liens and encumbrances against the property.

When Mr. [F] later inquired about the disposition of the personal property, respondent replied that the same "would be taken care of."

Thereafter respondent made no effort to achieve a division of the personal property and did not furnish any advice to Mr. and Mrs. [F] concerning any action which could be taken to object to the aforementioned sale of the real estate.

Petitioner avers that respondent has, by his conduct, violated the following Disciplinary Rules of the Code of Professional Responsibility:

A. D.R.1-102(A)(6) — dealing with conduct that adversely reflects on an attorney's fitness to practice law;

B. D.R.6-101(A)(3) — dealing with neglect of a legal matter entrusted to the attorney's care;

C. D.R.7-101(A)(1) — dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

D. D.R.7-101(A)(2) — dealing with an attorney's intentional failure to carry out a contract of employment;

E. D.R.7-101(A)(3) — dealing with an attorney's intentional prejudicing or damaging his client during the course of a professional relationship.

## Charge No. 5

Charge No. 5. This charge avers that respondent undertook to represent [H] in appealing from an adverse determination by the Appeals Council of the Social Security Administration of [H]'s claim for Social Security disability benefits. Respondent filed the necessary complaint on October 9, 1969. On December 29, 1969, the court remanded the case to the Social Security Administration for further administrative action. After such further administrative action, the Secretary of Health, Education and Welfare, filed a motion for summary judgment on February 11, 1971, and the case was referred by the District Court to a U.S. Magistrate for disposition of said motion.

On August 31, 1971, the U.S. Magistrate issued his report recommending that the motion for summary judgment be granted, and on October 18,

1971, the district court adopted the report of the magistrate and granted summary judgment to the Secretary of Health, Education and Welfare. Respondent received notification of the granting of said motion for summary judgment. Although [H] contacted respondent in person and by telephone numerous times between 1971 and 1975, respondent failed to tell his client that his claim had been denied, but on the contrary, led him to believe that he would soon be receiving disability payments.

It was not until December of 1975 that [H] learned from the Clerk of the District Court that his appeal had been denied by said court.

Petitioner avers that respondent has, by his conduct, violated the following Disciplinary Rules of the Code of Professional Responsibility:

A. D.R.1-102(A)(4) — dealing with conduct involving dishonesty, fraud, deceit and misrepresentation;

B. D.R.1-102(A)(6) — dealing with conduct which adversely reflects on an attorney's fitness to practice law;

C. D.R.6-101(A)(3) — dealing with neglect by an attorney of a legal matter entrusted to the attorney's care;

D. D.R.7-101(A)(1) — dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

E. D.R.7-101(A)(3) — dealing with an attorney's intentional prejudicing or damaging his client during the course of the professional relationship;

F. D.R.7-102(A)(5) — dealing with knowingly making a false statement of law or fact.

## Charge No. 6

Charge No. 6 avers that on December 4, 1974, respondent was contacted by [I] to defend an equity

action that had been filed against [I] and docketed to no. [ ] November term 1974 in the Court of Common Pleas of [ ] County, Pa. The contact with respondent had been made by [J], the son of [I].

[J] had taken the complaint to respondent's office and respondent at the time noted that the complaint had been served on [J] in the absence of his parents, on November 21, 1974, and that a response had to be filed within 20 days of the date of that service.

When [J] brought in the complaint, respondent asked [J] questions regarding each paragraph and at the conclusion of their meeting, respondent indicated to [J] that he would take care of the complaint, and if he had any more questions involving the complaint, he would contact [J]'s father by telephone. Respondent at the time refused a retainer, although [J] was prepared to pay the same at the time of the initial engagement.

On December 12, 1974, plaintiff acting through his attorneys entered a praecipe for judgment, which was entered on December 12, 1974. This judgment was entered the day after the 20 day period had expired and could be properly characterized as a snap judgment. The judgment is marked Exhibit 7-D.

On December 31, 1974, 19 days after the judgment was entered, [I], plaintiff, received a letter dated December 30, 1974, signed by [K], Esq., advising him that judgment had been entered by default and that the court had scheduled Wednesday, January 15, 1975, at 2 p.m. as the time for hearing.

Upon receipt of this letter, which is Exhibit PX-9, [J] went· immediately to respondent's office and gave the letter to respondent, who again questioned [J] regarding some matters in the complaint, and failed, according to [J], to adequately explain what a

default judgment was. Respondent indicated that a paper was being filed in the courthouse, and respondent would have to file a paper to counteract it. The meeting lasted approximately 45 minutes to an hour.

On January 15, 1975, the complainant, [I], the witnesses, [J] and [L], were present in court, along with respondent. Respondent gave [I] an answer (marked Exhibit PX-7E) which he attempted to file, but which filing was refused because of the entry of the default judgment. Apparently a conference between and among counsel and the Honorable [M], then the President Judge of the Court of Common Pleas of [      ] County, took place; after which Judge [M] announced that on January 31, 1975, a hearing would be held to consider a petition to open judgment if, in fact, such petition were filed before that date or, if not, then to frame an appropriate decree to conform to the default judgment.

On January 30, 1975, the witness, [J], received a telephone call from respondent who indicated to him that respondent had a severely infected tooth and that he would not be able to go to the hearing the following day. He assured [J] that the hearing would be postponed and instructed [J] not to go.

On January 31, 1975, the court met and entered an order setting February 19, 1975, at 4 p.m. as the time within which the court would take testimony to assist it in its adjudication and framing of a decree. Notice of this was properly received by [J] and his father and respondent was notified of the same.

On February 19, 1975, [J] and his father and uncle appeared at the courthouse. However, respondent failed to appear. When contacted by [J], respondent indicated that he had the matter listed for the following week, or February 26, 1975, and that

respondent would be unable to attend. He told [J] to proceed without him.

When the judge was advised of this by [J], Judge [M] indicated to [I], plaintiff, "You'll have to represent yourself." The opposing party was represented by [K]; and as a result of that, a decree was entered transferring 150 acres of land from [I] to his brother, who was plaintiff in the original and underlying action.

The record reveals that respondent did not file a motion to open judgment within the stipulated time, and had not, in fact, obtained a continuance of the January 31, 1975 hearing from the court.

Immediately after the conclusion of the February 19, 1975, hearing, [I] and his son visited respondent to inquire about his failure to appear. Respondent indicated to them that he should not worry and that respondent would obtain a transcript of the hearing and "proceed from there."

The record reveals that subsequent to February 19, 1975, respondent took no action whatsoever relative to [I]'s case, though he had indicated that he would do so. Thereafter, on August 15, 1975, the court entered a decree in equity which caused [I] to lose title to approximately 150 acres of farm land.

Upon receiving a copy of the decree, [I] attempted to contact respondent on several occasions; but respondent was unavailable. Therefore, [I] obtained other counsel and was compelled to pay counsel approximately $2,400 in an unsuccessful attempt to open judgment.

Testimony by opposing counsel, Messrs. [N] and [K], indicated that the first contact either had with respondent was on January 15, 1975, at the hearing in [    ], before Judge [M].

Petitioner avers that respondent has, by his conduct, violated the following disciplinary rules of the Code of Professional Responsibility:

A. D.R.6-101(A)(3), dealing with neglect by an attorney of a legal matter entrusted to his care;

B. D.R.7-101(A)(1), dealing with an attorney's intentional failure to seek the lawful objectives of his client through reasonably available means;

C. D.R.7-101(A)(2), dealing with an attorney's intentional failure to carry out a contract of employment;

D. D.R.-101(A)(3), dealing with an attorney's intentional prejudicing or damaging his client during the course of the professional relationship; and

E. D.R.1-102(A)(5), dealing with conduct prejudicial to the administration of justice.

## Charge No. 7

At various times between January 2, 1974, and April 30, 1975, respondent undertook, for an unspecified contingent fee, to individually represent a group of individuals on an appeal from adverse determination by the Appeals Council of the Social Security Administration of each of their claims for black lung or Social Society disability benefits. Respondent perfected these appeals at varying dates between January 2, 1974, and April 30, 1975, by filing a complaint against the Secretary of H.E.W. in the United States District Court for the [    ] District of Pennsylvania.

As would be anticipated, the secretary, acting through counsel, filed an answer and motion for summary judgment with each such motion being supported by a brief. These filings occurred between March 27, 1974, and November 11, 1975. In every case that respondent handled, he failed to file a responsive brief in opposition to the motions for

summary judgment or to secure an extension of time from counsel or the secretary. The evidence would indicate that respondent was aware of the deadline for filing such briefs.

Because of the failure to respond with a brief, summary judgment was granted in each case by the order of the United States District Court for the [    ] District of Pennsylvania ([O], J.) on various dates between June 30, 1975, and December 11, 1975.

It would appear that respondent neglected to advise any of his clients that he had not filed a brief in opposition to the various motions for summary judgment or that their appeals had been dismissed, nor did he advise them of their right to proceed by further appeal.

A second group of cases involves a situation where respondent, at various times between August 6, 1974, and June 4, 1975, undertook, for an unspecified contingent fee, to individually represent persons in an appeal from adverse determinations by the Appeals Council of the Social Security Administration for black lung or Social Security disability benefits.

Respondent perfected these appeals on varying dates between August 6, 1974, and June 4, 1975, by virtue of filing a complaint against the Secretary of H.E.W. in the United States District Court for the [    ] District of Pennsylvania. The secretary, through its counsel, responded in each case by filing an answer, a motion for summary judgment, with a brief being filed in support of that motion. As in the previous cases, respondent failed to timely file a responsive brief in opposition to the motions, or to timely refer the case to other counsel for the filing of a responsive brief. Respondent's defense appears to be that he was ascending to the bench of the Court of Common Pleas of [    ] County and because of the

transition that was occurring, he was unable to properly follow these matters.

The result of respondent's failure or to take other action resulted in the motions for summary judgment being unopposed and summary judgment being granted by the United States District Court for the [ ] District of Pennsylvania ([O], J.) between January 6, 1976 and April 28, 1976. Respondent did not inform any of the clients that he would not file or had not filed a brief and subsequent to the entry of summary judgment in each case, the client files for each client were either returned to the client or delivered to successor counsel. Several of the clients successfully petitioned to open summary judgment and these individuals did receive a hearing on the merits of their claims in the court. However, determination on the merits was delayed an inordinate period of time because of the lack of responsibility shown by respondent.

As to other clients within this group, they were unsuccessful in obtaining the opening of summary judgment and they never received a determination on the merits of their claim.

Three of the clients, no successor counsel was ever retained and no action of record was ever taken.

A third group of clients, the Secretary of H.E.W. filed motions to dismiss on May 29, 1975, and August 8, 1975, from appeals that had been taken on the grounds that the complaint had not been timely filed within the statutorily prescribed 60-day period following the decision of the appeals counsel. Respondent again failed to file responsive briefs or take any action, nor did he notify his clients of the results.

## III. DEFENSES OF RESPONDENT

### Charge No. 1:

Respondent failed to introduce any evidence which would serve to justify his conduct with respect to this count.

### Charge No. 2:

Withdrawn as stated aforesaid.

### Charge No. 3:

No evidence was presented by respondent to justify his failure to remedy a title problem of which he was aware.

### Charge No. 4:

Respondent's only defense hereto was that the complaint brought by [F] was at the urging of Mrs. [F]'s husband, [P]. Respondent then averred that [P] owed him, respondent, $250 with respect to a divorce action respondent obtained for [P] from his first wife.

### Charge No. 5:

In his answer, respondent does not deny the allegations of this count, but, avers surprise that [H] reported him to the board since he received get well greetings from [H] while hospitalized and had been cordially greeted by Mr. and Mrs. [H] during a church service.

### Charge No. 6:

Although respondent may have been victimized in this matter by the taking of a "snap judgment" by

opposing counsel, there was no evidence presented which would constitute an excuse for defendant's failure to file a timely answer or to fail to appear at two hearings all of which culminated in the entry of a default judgment.

## Charge No. 7:

Although there is no question that respondent's conduct in this matter constitutes a major dereliction of duty, there was testimony that his efforts to aid his clients were hampered by the fact that his secretary abruptly left his employ and that she had been responsible for his suspense system in these matters. Once respondent had failed to meet pleading deadlines and summary judgment had been entered against his clients, he did make efforts to obtain new counsel. However, as the hearing committee stated, such efforts would have been unnecessary if due diligence were initially exercised.

## IV. SUMMARY

In overall mitigation, with respect to all the charges, respondent offered the following: that his campaign and subsequent election to the judiciary severely curtailed the time he could devote to his legal practice, that his heart and eye afflictions (each of which required treatment at [    ] Medical Center) caused him to be diverted from the single mindedness with which he formerly pursued his practice; and that his secretary of many years left his employ on short notice, thereby causing havoc with respect to his office organization and procedures.

Finally, we feel compelled to discuss, at least briefly, the time delays which can be observed in the prosecution of this case. A review of the record

reflects that respondent assumed the Office of the Judge of the Court of Common Pleas of [     ] County in January of 1976. The allegations of misconduct concern themselves with conduct during the years of 1974 and 1975 and a complaint was received by the Disciplinary Board as early as June 12, 1975. Office of Disciplinary Counsel in correspondence during 1979 directed to several of the complainants acknowledges the lengthy delay. The petition for discipline was filed on July 23, 1981, over five years after respondent had left the active practice of law. While we concur with the hearing committee's conclusion that this matter should not have been dismissed on the grounds of laches, we do feel that the excessive delay which occurred in between the time these charges were brought to the attention of the Disciplinary Board and the time when chief counsel finally brought these matters to the attention of the hearing committee causes these proceedings to be fundamentally unfair to respondent.

In testimony before a panel of the Disciplinary Board, it was established that respondent's record during the time he has been on the bench is that of a conscientious and competent jurist. [Q], Executive Director of the Judicial Inquiry and Review Board testified that he was prohibited by Article 5, §18.19 of the Pennsylvania Constitution from revealing whether any charges were now pending before the Judicial Inquiry and Review Board against respondent. He did testify that no discipline had been imposed upon respondent during the time that he served on the bench. Disciplinary counsel was unable to relate any instance in which charges were brought against respondent during this time on the bench. Both respondent and his attorney assured the panel that they were not aware of any charges or complaints pending against respondent before the

Disciplinary Review Board. Therefore the panel concluded that in fact no charges or complaints had been brought against respondent arising from his conduct as a Judicial Officer.

Respondent testified that although the case load in [   ] County had greatly increased during the time he served on the bench there was no backlog. He had been able to carry on his caseload as well as perform the administrative duties of President Judge. Before respondent was elevated to the bench of [   ] County in 1976, no study or report of cases in the [   ] Judicial District had ever been compiled. Respondent began annual judicial reports, the first of which covered the years of 1976-1977. Subsequent reports cover each year. Since 1978, respondent has had opinions included in the District and County Reports at the rate of about two a year. In addition, he has written and lectured extensively in [   ] County on the subject of human dignity and human rights. In April of 1985, he was presented by the Amvets with the National Commanders Distinguished Service Award. This year, respondent is standing for retention as a judge in [   ] County.

It was the conclusion of the board that respondent is not guilty of any disciplinary violations motivated by the desire for improper gain. Instead, his violations stemmed from disorganization, overwork, ill health, and the loss of a secretary on whom he relied during a time when he was attempting to run a campaign for judicial office with little or no outside assistance.

It was the feeling of the board that notwithstanding the serious nature of the respondent's disciplinary violation that his good record during the 10 years which intervened between the list of the charges at the present time and Rule 85.10 with regard to stale matters which prevents the Office of

Disciplinary Counsel or the board from entertaining any complaint arising out of acts or omissions or occurring more than six years prior to the date of the complaint indicate that the proper disposition of the charges against respondent should be a dismissal.

The board recognizes that Rule 85.10 prevents prosecution of respondent for acts or omissions which occurred more than six years prior to the date of the complaint and that proceedings had been brought against respondent within a six year period of the occurrence of the acts which were subject to the complaint. Nevertheless, it was the opinion of the board that 10 years was such an excessive length of time for disciplinary proceedings to be continued without resolution that imposition of discipline at a time so far from the time of the disciplinary violations would be inappropriate.

Furthermore, the board is cognizant of the fact that one of the principal reasons for the imposition of discipline is to insure the protection of the public from a respondent whose uninterrupted practice might cause serious injury or loss to those clients with whom he might come into contact. Here, the unblemished record of respondent during the last 10 years which he has served on the bench indicates that the public is in no need of protection from respondent.

## V. RECOMMENDATION

The Disciplinary Board of the Supreme Court of Pennsylvania determined that the charges against respondent be dismissed. Messrs. Schwartzman, McDonald, Keck and Tumolo dissent. Messrs. Schwartzman, McDonald and Tumolo would recommend a public censure, and Prof. Keck would recommend public discipline.

## ORDER

NIX, *C.J.*, And now, this December 9, 1985, upon consideration of the petition for review, the order of the Disciplinary Board entered June 26, 1985, is vacated, and it is ordered that respondent be subjected to censure to be administered by the Disciplinary Board at a time and place to be designated by the board. It is further ordered that respondent shall pay costs, if any, to the Disciplinary Board pursuant to Rule 208(g), Pa.R.D.E.